UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| ERIC D. SMITH, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| v. | ) | No. 1:10-CV-222 |
| | ) | *Judge Curtis L. Collier* |
| OFFICER OWENS and OFFICER DANIEL, | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Eric D. Smith ("Plaintiff"), a *pro se* plaintiff, seeks damages from Defendant Officer Jeff Owens ("Officer Owens") and Defendant Officer Dale Daniel ("Officer Daniel") for deprivation of his civil rights under color of state law pursuant to 42 U.S.C. § 1983 (Court File No. 2). Plaintiff's action arises from an altercation between Plaintiff and Defendants on December 14, 2009.

Presently before the Court are Defendants' motion for summary judgment (Court File No. 43), Plaintiff's motion to amend his opposition to Defendants' motion for summary judgment with an exhibit of the judgment of his acquittal of the assault charges against Defendants (Court File No. 47), and Plaintiff's response and counter motion for summary judgment (Court File No. 48). For the reasons set forth herein, Plaintiff's motion to amend will be **GRANTED** (Court File No. 47), Defendants' and Plaintiff's motions for summary judgment will be **DENIED** (Court File Nos. 43, 48).

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that

can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907. Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex,* 477 U.S. at 324; *Lansing Dairy*, *Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994), *cert. denied*, 516 U.S. 806 (1995); *Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992) (holding courts do not have the responsibility to search the record *sua sponte* for genuine issues of material fact). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

2

Case 1:10-cv-00222 Document 56 Filed 12/06/12 Page 2 of 11 PageID #: 257

## II.     FACTS

On December 14, 2009, it is undisputed that Defendants entered Plaintiff's cell and an altercation ensued. That fact, however, appears to be the only undisputed fact concerning the altercation. Plaintiff contends he and Officer Daniel "had words" prior to breakfast that morning (Court File No. 49). After finishing his breakfast, Plaintiff maintains he was lying on his bed when Defendants entered and began striking him several times in the face, head, and ribs, in addition to kicking him (Court File No. 49). After being booked for assaulting the Defendants, Plaintiff was transported to Erlanger Hospital where they determined he suffered a broken nose, black eye, bruised ribs, and a concussion as a result of the altercation (Court File No. 49). Plaintiff denies that he bit, kicked, punched, or fought the officers at any time and points to his injuries, the lack of injuries to Defendants, and the fact the jury acquitted him of assaulting Defendants as proof Defendants attacked him (Court File No. 49). Plaintiff seemingly admits he waited until February 2010, after he was transferred to CCA-Silverdale, to contact internal affairs to complain about the alleged assault (Court File No. 49). Plaintiff contends that after several attempts to contact internal affairs, Investigator Debbie Morse came to CCA-Silverdale on June 14, 2010, to interview him about the December 14, 2009, assault (Court File No. 49).

Officer Daniel's affidavit testimony begins at the point where he and Officer Owens went to Plaintiff's cell after breakfast to remove his food tray from his cell and departs dramatically from Plaintiff's version (Court File No. 44-4). Officer Daniel explains that due to Plaintiff's previous behavior of attacking officers, two officers were required to be present whenever Plaintiff's cell had to be opened. Officer Daniel avers he and Officer Owens were the only two officers who worked on the first floor that had not been attacked by Plaintiff. The officers went in Plaintiff's cell to

3

retrieve his food tray and observed trash in different areas of his cell. Officer Owens picked up the trash on and around the commode, and when Officer Daniel stepped in to pick up the trash from the bench, Plaintiff jumped up from sitting in the corner, hit him in the face, and said, "don't touch my s..t." (Court File No. 44-4, p. 2). Defendants attempted to control Plaintiff. Officer Daniel was holding Plaintiff's right arm, attempting to secure it behind his back, when Plaintiff bit his left arm and he hit Plaintiff to stop him from biting. Defendants attempted to secure his arms again, Plaintiff bit Officer Daniel again, and he hit Plaintiff again. Plaintiff stopped biting him, pulled away from the officers, and when Officer Daniel attempted to take Plaintiff to the floor using a head control technique, Plaintiff pushed Officer Daniel into the back wall and pinned him there. During this attempt, Plaintiff's head was bent down and he began biting the side of Officer Daniel's stomach. The officer struck Plaintiff around the head to stop the biting but Plaintiff continued to fight and when the two officers attempted to take Plaintiff to the ground, his face hit the bench in his cell. Once Plaintiff hit the bench, he said, "I give up," and placed his hands behind his back and allowed handcuffs to be placed on him (Court File No. 44-4).

Although Officer Owens did not submit an affidavit, the record includes his responses to Plaintiff's interrogatories under oath. Officer Owens states he was asked by Officer Donahue to take his place in retrieving the breakfast tray and garbage from Plaintiff's cell because Officer Donahue had previously had a confrontation with Plaintiff and did not want to be around him. In addition, Officer Owens avers that Plaintiff was the aggressor during this incident as he and Officer Daniel were doing their job of providing him with a clean living environment when he punched and bit Officer Daniel (Court File No. 44-6). The following is Officer Owens' version of the facts:

> [M]yself and officer Daniel entered the cell to clean the trash from his cell, there were two of use [sic] because that was the order from supervision to have two

4

officers present when inmate Smith's cell door was open. Inmate Smith became violent and struck officer Daniel in the chin, inmate Smith also began biting officer Daniel. I officer Owens trying to pull inmate Smith off officer Daniel was struck in the chest by inmate Smith's elbow. I officer Owens trying to strike a pressure point on inmate Smith's arm stuck [sic] him in the ribs, due to the cell being a small area and both inmate Smith and officer Daniel were moving around violently. Once myself and officer Daniel gained control of inmate Smith by forcing him down into the bench we were able to place hand restraints on inmate Smith stopping the assault on police.

(Court File No. 44-6, p. 7).

The record also consists of documentation of an internal affairs investigation ("IA") but it appears that only a cursory investigation was done as to this incident (Court File Nos. 44-1, 44-2, 44-3). Detective Debra Morse avers "I addressed the altercation which took place on December 9, [sic] in the Plaintiff's cell at the Hamilton County Jail. I determined that the Plaintiff's allegations of excessive force against Corrections Officers Dale Daniel and Jeff Owens could not be substantiated. In fact, it was the Plaintiff who subsequently would be charged with criminal offenses as a result of his actions against the two officer." (Court File No. 44-1).

Detective Morse included her memorandum to Captain W.F. Johnson wherein she includes a brief paragraph regarding her interview with Plaintiff regarding this incident (Court File No. 44-2). According to the report, Plaintiff complained about his conditions of confinement, a corrections officer dating his ex-girlfriend, his extended incarceration as a result of the pending charges, and maintained he neither provoked the officers nor assaulted them.

The report reflects the IA investigator doubted Plaintiff's credibility The investigator noted that if Plaintiff had any reservations about reporting the violation in fear of retaliation, his transfer to CCA would have been an optimal opportunity to report the infraction while under the care of CCA. The IA investigator states the fact the delayed report was near the proximity of his pending

5

court date left questions as to the motivation of the complaint and the legitimacy of the complaint. In addition, the IA investigator noted that due to Plaintiff's delay in reporting the incident, surveillance images were purged and unavailable for investigative viewing. The IA investigator concluded that due to a lack of evidence or supported testimonial leads, the investigative inquiry of police misconduct could not be substantiated (Court File No. 44-2).

Specifically, Plaintiff claims his right to be free from cruel and unusual punishment was violated when Defendants used excessive and unreasonable force while acting under color of law when Defendants allegedly assaulted him after he and Officer Daniel had been engaged in a verbal altercation. In his only pleading submitted under penalty of perjury, Plaintiff avers that after he and Officer Daniel had words, the Defendants entered his cell while he was lying down after breakfast and repeatedly struck him in the face, head, and ribs, and kicked him (Court File No. 49). Plaintiff avers that contrary to Defendants contentions, he did not bite, kick, or punch Defendants at anytime, yet they charged him with assault after the incident; a charge of which he was subsequently acquitted by a jury. Plaintiff avers he suffered a broken nose, black eye, bruised ribs, and a concussion. For these alleged constitutional violations, plaintiff seeks $1,000,000.00 from Defendants.

### III. ANALYSIS

#### A. Defendants' Motion for Summary Judgment

Defendants claim they are entitled to summary judgment as a matter of law, claiming there is no genuine issue of material fact as to the liability of either Defendant. In addition, Defendants assert they are entitled to qualified immunity because there was no constitutional violation of Plaintiff's rights and the force used against Plaintiff was not excessive under the circumstances.

6

Furthermore, Defendants argue no clearly established right was violated. According to Defendants, their decision to use force to subdue Plaintiff was reasonable under the circumstances.

Defendants contend they are entitled to qualified immunity because their alleged conduct did not violate clearly established rights that a reasonable person would have known. The doctrine of qualified immunity shields government officials performing a discretionary function "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome an immunity defense, a plaintiff must show the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S.Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) internal punctuation and changes omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 131 S.Ct. at 2083.

Generally, in determining whether an official has qualified immunity, the Court engages in a two-step inquiry. In *Saucier v. Katz*, 553 U.S. 194 (2001), the United States Supreme Court mandated a court must first decide whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right and if so, then decide whether the constitutional right was clearly established. Subsequently, however, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court decided the sequence of the two-step procedure for determining whether an official has qualified

7

immunity is no longer mandatory and the lower courts are permitted to exercise their sound discretion in deciding which of the two prongs of the test should be applied first. *Id*. at 236.

To determine whether a right is clearly established, a court must look first to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decision of other circuits. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once a defendant moves for dismissal based on qualified immunity, "[t]he ultimate burden is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Id*.

Here, contrary to Defendants contention, claims that jail officials used excessive force when subduing an inmate are not analyzed under the Fourth Amendment's "objective reasonableness" standard. Instead, such claims are analyzed under the Fourteenth or Eighth Amendment right to be free from cruel and unusual punishment. The Court is unable to determine from the record before it whether Plaintiff was a convicted prisoner or a pretrial detainee. The Sixth Circuit has instructed that,

> [T]he standard applying to a pretrial detainee's excessive force claim lies in the murky area between the Fourth and Eighth Amendments. At the very least, we have held that the Fourteenth Amendment Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. The Fourteenth Amendment is the source of a pretrial detainee's excessive force claim because when a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials.

*Lanman v. Hinson*, 529 F.3d 673, 680-81 (6th Cir. 2008).

Although the Sixth Circuit has not articulated the exact level of protection afforded pretrial detainees by the Due Process Clause, *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("While there is room for debate over whether the Due Process Clause grants pretrial detainees more

8

protections than the Eighth Amendment does, we need not resolve that debate here. Under either constitutional guarantee, an excessive-force claimant must show something more than *de minimis* force), under either constitutional guarantee, Plaintiff has alleged a sufficient excessive force claim.

Defendants maintain the force they used was objectively reasonable, considering the situation as each Defendant perceived it (Court File No. 44). The problem with Defendants argument is that Plaintiff claims he did absolutely nothing to resist Defendants. Plaintiff avers he did nothing when the officers entered his cell and did nothing to protect himself from their excessive force. Plaintiff's conduct, according to him, did not provoke any use of force whatsoever on the part of Defendants and that is dispositive as a matter of law on the qualified immunity defense proffered by defendants. Under Plaintiff' account of the events, and viewing the facts in the light most favorable to him, he did not resist Defendants and the assault charges lodged against him were completely fabricated. Specifically, if Plaintiff's claim he did nothing to resist Defendants is true, it would not be objectively reasonable for Defendants or any reasonable officer in their situation to believe that the amount of force they were using against Plaintiff was reasonable. Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe it was reasonable to use the amount of force Defendants used, Defendants are not entitled to qualified immunity as a matter of law. The availability of qualified immunity defense depends on whether "'a reasonable officer could have believed'"his action "'to be lawful, in light of clearly established law and the information [he] possessed.'" *Hunter v. Bryand*, 502 U.S. 224, 227 (1991) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Since Defendants version of the facts are sharply disputed, the matter of the officer's qualified immunity cannot be resolved as a matter of law.

In sum, considering the allegations in a light most favorable to Plaintiff, as the Court is required to do, *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005), Plaintiff has alleged a violation of his constitutional right to be free from physical abuse by officials. In addition, the right was clearly established, whether it be under the Eighth or Fourteenth Amendments. *Id.*

Because the parties dispute virtually all of the essential facts surrounding the incident, it is impossible to determine, without choosing between the parties' sharply different factual accounts, whether Defendants used reasonable force. Thus, based on the diametrically opposing version of events between Plaintiff and Defendants, there are clearly material issues of fact concerning what occurred. "[W]hen the legal question of qualified immunity turns upon which version of facts one accepts, summary judgment cannot be granted." *Vance v. Wade*, 546 F.3d 774, 787 (6th Cir. 2008) (internal punctuation and citations omitted). In this case Plaintiff avers he was beaten by the officers gratuitously, and he did not resist. Where there is a material issue of fact, neither summary judgment nor qualified immunity can be granted to Defendants in their individual capacities. Therefore, summary judgment will be **DENIED** (Court File No. 43).

### B. Plaintiff's Motion for Summary Judgment

Plaintiff maintains he is entitled to summary judgment because a Hamilton County Criminal Court jury acquitted him on the charges of assault with which Defendants charged him and now base their defense (Court File No. 48). Plaintiff maintains the doctrines of res judicata or collateral estoppel prevent Defendants from asserting the defense that he assaulted them.[1] Defendants'

---

[1] Notably, the burden of proof for establishing assault in a criminal case–beyond a reasonable doubt–differs from the burden of proof for establishing assault in a civil case–by a preponderance of the evidence. Thus, Plaintiff's contention is incorrect. *One Lot Emerald Cut*

10

contend Plaintiff's motion for summary judgment is untimely (Court File No. 51).

In April 2012, the Court entered a Scheduling Order, requiring that all motions, including motions to dismiss and/or for summary judgment, be filed on or before August 20, 2012 (Court File No. 32). Plaintiff's dispositive motion was filed on or about September 10, 2012—at least twenty-one days after the deadline. Plaintiff did not move to extend the deadline for filing dispositive motions, nor has he made any attempt to show good cause for the late filing. Plaintiff's counter motion for summary judgment, therefore, will be **DENIED** as untimely (Court File No. 48).

## IV. CONCLUSION

Accordingly, Defendants' and Plaintiff's motions for summary judgment will be **DENIED** (Court File No. 43, 48), and Plaintiff's motion to amend will be **GRANTED** (Court File No. 47).

A separate order will enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

*Stones and One Ring v. United States*, 409 U.S. 232, 235 (1972)("[T]he difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel. The acquittal of the criminal charges may have only represented an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused. As to the issues raised, it does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings." (internal punctuation and citations omitted)); *Holland v. Bramble*, 638 F.Supp.2d 429, 432 (D.Del. 2009) (defendant was not precluded from seeking damages for civil assault after plaintiff was acquitted of criminal assault for same incident).