UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ERIC DEWAYNE SMITH, ) | |
| ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 1:10-CV-222 |
| v. ) | |
| ) | *Judge Curtis L. Collier* |
| OFFICER JEFF OWENS AND ) | |
| DALE DANIEL, ) | |
| ) | |
| *Defendants*. ) | |

## **MEMORANDUM**

The Court held a bench trial that lasted two days on December 12 and 13, 2012. Eric D. Smith ("Plaintiff"), a *pro se* plaintiff, seeks damages from Defendant Officer Jeff Owens ("Officer Owens") and Defendant Officer Dale Daniel ("Officer Daniel") (collectively "Defendants") for deprivation of his civil rights under color of state law pursuant to 42 U.S.C. § 1983 (Court File No. 2).

On August 16, 2010, Plaintiff filed his complaint in this court against Officer Owens and Officer Daniel and others.[1] (Court File No. 2). In the complaint, Plaintiff alleges on December 14, 2009, while incarcerated at the Hamilton County, Tennessee jail he was assaulted by Officer Owens and Officer Daniel in his cell. He alleges the assault was unprovoked by any actions on his part and that as a result of the assault he suffered a broken nose, black eye, bruised ribs, and a concussion. He states he was transported to Erlanger Hospital where these injuries were recorded and treated. He seeks a judgment in his favor in the amount of $ 1,000,000.00.

---

[1]The complaint named a number of other defendants but the Court dismissed them from this action prior to trial. (Court File Nos. 26, 27).

The Court heard the testimony of six witnesses[2]: (1) Eric Dewayne Smith, the plaintiff, (2) Officer Owen, (3) Officer Daniel (4) Sgt Robert Harvey, (5) Detective Debra Morse, all called by Plaintiff, and (6) Captain John Swope, called by Defendants. The Court also received a large number of exhibits. A total of sixteen exhibits were entered into evidence–nine exhibits were entered by Plaintiff and seven by Defendants. Pursuant to Fed. R. Civ. P. 52(a)(1), the Court now issues its findings of fact and conclusions of law, which explain why the Court will enter judgment for Defendants.

**I.     FINDINGS OF FACT**

1. Plaintiff, Eric Dewayne Smith, was an inmate in the custody of the Hamilton County, Tennessee jail on December 14, 2009.

2. Defendant, Jeff Owen, was an employee of the Hamilton County, Tennessee Sheriff's Department assigned to the Hamilton County Jail on December 14, 2009.

3. Defendant, Dale Daniel, was an employee of the Hamilton County, Tennessee Sheriff's Department assigned to the Hamilton County Jail on December 14, 2009.

4. Defendants were acting in their capacity as employees of the Hamilton County Sheriff's office and thus were acting under color of state law.

5. This Court has jurisdiction of this litigation pursuant to 28 U.S.C. § 1331 based upon this civil action arising under the Constitution and laws of the United States and pursuant to 28 U.S.C. § 1343.

---

[2]Plaintiff's mother, Mary Smith, was called to the stand by Plaintiff. But after an objection to questions by Plaintiff as to what his mother had been told by others was sustained, Plaintiff stated he had no questions for Ms. Smith. She then stepped off the witness stand without giving any testimony.

6. Venue lies in the United States District Court for the Eastern District of Tennessee, Southern Division.

7. On December 14, 2009, Plaintiff was an inmate at the Hamilton County Jail housed on the Quarter Deck, a part of the jail used for administrative segregation of inmates.

8. Plaintiff was unhappy with his assignment and had made complaints regarding the assignment and the lack of access to the normal amenities of jail.

9. Plaintiff had sought to be transferred from Hamilton County Jail to another facility.

10. Plaintiff previously had a number of run-in with jail personnel.

11. Defendants went to Plaintiff's cell to retrieve his food tray from his cell after breakfast.

12. Defendants were not wearing black leather gloves in preparation to beat Plaintiff.

13. Upon entering the cell an altercation arose between Plaintiff and Defendants.

14. Plaintiff attacked Officer Daniel by striking him in the face.

15. Officer Daniel and Officer Owen attempted to subdue Plaintiff and a struggle ensured between the three.

16. During the course of the altercation, Plaintiff was wrestled to the floor of the cell and was struck by both officers about his head and body.

17. As Plaintiff struggled with and resisted the officers he struck the metal bed in his cell as well as the concrete floor.

18. After gaining control of Plaintiff, Defendants placed him in handcuffs.

19. The struggle took approximately three minutes.[3] The officers entry into and exit from the cell were recorded on jail video.

20. After the struggle, Defendants departed the cell. Officer Owens noticed that his badge was missing and must have fallen off during the struggle.

21. The officers returned to the cell to retrieve the badge. In searching for the badge they placed Plaintiff's possessions in the hall.

22. They located the badge and left Plaintiff's cell.

23. Shortly after the altercation, Sgt. Harvey went to Plaintiff's cell to check on him. According to Plaintiff, he had known Sgt. Harvey for many years and had trust and confidence in Sgt. Harvey.

24. Sgt. Harvey asked Plaintiff his condition and noted Plaintiff was agitated. During the conversation, Plaintiff calmed down. Sgt. Harvey removed the handcuffs from Plaintiff.

25. Sgt. Harvey did not see any significant injuries on Plaintiff. He did see "a drop or two" of blood near the sink consistent with being from a nose bleed.

26. Sgt. Harvey also testified that Plaintiff has intentionally harmed himself in the past.

27. Plaintiff was charged with assault on Defendants but was acquitted of the charges by a jury in state court.

28. Plaintiff was interviewed by Detective Debra Morse of the Internal Affairs office of the Hamilton County Sheriff's Office.

---

[3]The DVD reflects Defendants entered Plaintiff's cell at 5:23:35 a.m. and exited at 5:26.21. Thus, they were in Plaintiff's cell for 2 minutes and 46 seconds (Exhibit No.1).

29. She prepared a report (Exhibit 16) and in the report are statements made by Plaintiff to the Crisis Response Team, an outside organization called to evaluate Plaintiff to determine whether to continue housing him under suicide precautions (p. 116). These statements repeat threats made by Plaintiff regarding his intentions to fight jail authorities and not comply with jail requirements.

30. These statements also indicate that Plaintiff made threats of suicide in an effort to be moved from his place of confinement.

31. These statements also indicate that Plaintiff is manipulative and untruthful.

32. Defendants on December 14, 2009, while performing their duties were attacked by Plaintiff.

33. In defending themselves from Plaintiff's attack and in attempting to subdue him, Defendants were required to use force.

34. The amount of force used by Defendants was commensurate with the force used by and the threat posed by Plaintiff and was not excessive.

35. The amount of force used by Defendants was for a proper penological and protective purpose and was not unnecessary and a wanton infliction of pain.

36. The amount of force used by Defendants was applied in a good faith effort to maintain and restore order, discipline and not to cause harm.

## II. CONCLUSIONS OF LAW

1. The Court must determine whether Defendants, Officer Owens and Officer Daniel, used excessive force against Plaintiff Eric D. Smith ("Smith"). The unnecessary and

wanton infliction of pain amounts to cruel and unusual punishment which the Eighth Amendment prohibits. *Hope v. Pelzer*, 537 U.S. 730, 736 (2002). To succeed on an Eighth Amendment cruel and unusual punishment claim on the basis of excessive force under Section 1983, a plaintiff must prove the offending conduct was an "unnecessary and wanton infliction of pain." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

2. A viable Eighth Amendment claim has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. at 103). Although the objective component generally requires more than *de minimis* pain or injury, in the excessive force context, if a prison official maliciously and sadistically uses force to cause harm, "contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Id.* at 9 (citations omitted). The subjective component requires that the prisoner official had "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. at 834. When deciding whether a use of force violates the Eighth Amendment, the "core judicial inquiry" must be "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). This state-of-mind inquiry will reveal whether the force was applied wantonly, thus satisfying the subjective component of an Eighth

6

Amendment claim. *See Farmer v. Brennan*, 511 U.S. at 834. Thus, where the allegations reflect the prison official had knowledge and inflicted the pain unnecessarily and wantonly, the subjective component is satisfied. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). For excessive use of force claims, wantonness is defined as acting maliciously and sadistically for the very purpose of causing harm. *Farmer*, 511 U.S. at 835-36.

3. To determine whether force was used in good faith to restore order or maliciously to cause harm, courts must consider "the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. at 7 (internal punctuation and citation omitted).

4. After considering the testimony and exhibits offered at trial, the Court concludes Officers Owens and Daniel entered Plaintiff's cell on December 14, 2009, with the intent to retrieve his breakfast tray.[4] Upon entry, Officer Owens retrieved the breakfast tray and Officer Daniel bent down and reached for other trash in Plaintiff's cell when Plaintiff attacked Officer Daniel by striking him on the chin, grabbing him, and biting him. Officer Owens reacted by throwing the breakfast tray in the hall and attempting to restrain Plaintiff as he was biting Officer Daniel. Plaintiff responded to the officers' attempts to restrain him by continuing to bite Officer Daniel. Officer Daniel punched Plaintiff in an attempt to stop Plaintiff from biting him, and Officer

---

[4]The breakfast tray is actually a small styrofoam container.

7

Case 1:10-cv-00222-CLC-SKL   Document 64   Filed 01/02/13   Page 7 of 11   PageID #: 288

Owens attempted to perform a "muscle strike" on Plaintiff. Officer Owens described a "muscle strike" as a punch to Plaintiff's tricep muscle to weaken his arm so that he could be restrained. Officer Owens missed Plaintiff's tricep and hit him in the area of his ribs. The scuffle continued until finally, the Officers were able to grab Plaintiff's arms and raise them behind him, at which time he went down to his knees, hitting his face on the metal bed in his cell.

5. The force Defendants applied to Plaintiff–hitting him to stop him from biting Officer Daniel; attempting to take him to the ground; grabbing his arms and raising them behind him in an effort to handcuff him; and physically restraining him, was fully justified. The force was used because Plaintiff had hit Officer Daniel and continued to bite the officer and resist being handcuffed. Officer Daniel admitted to hitting Plaintiff and hitting him at least one time in the face to stop Plaintiff from biting him. Officer Owens admitted to attempting to perform a "muscle strike" on Plaintiff's tricep in an effort to weaken his arm but missing the target muscle and hitting Plaintiff in the area of his ribs. Physical force was appropriate under these circumstances. This struggle lasted less than three minutes and was no longer than necessary to subdue Plaintiff and restrain him. Although Plaintiff's nose was broken and he suffered injuries to his head and eye, his injuries were not the result of unnecessary force, but rather, were the result of Defendants' efforts to protect themselves from further harm by Plaintiff and to subdue and control Plaintiff.

6. Central to the legitimate policies and goals of the corrections system, "is the institutional consideration of internal security within the corrections facilities

8

themselves." *Pell v. Procunier*, 417 U.S. 817, 823 (1974). A situation involving an inmate who is attacking prison officials poses a risk to the orderly functioning of the institution and the safety of the facility, and staff. Correctional official are required to take reasonable steps to ensure the safety of prison staff and inmates in a "volatile community" which includes "persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). When an inmate "engages in violent and disruptive behavior, prison officials are authorized and required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates." *LeMarie v. Maass*, 12 F3d. 1444, 1458 (9th Cir. 1993).

7. Given the institutional environment in which this incident occurred and the fact Defendants were confronted with Plaintiff's combative and disruptive conduct, the Court does not find the amount of force used to be excessive. Defendants were confronted with Plaintiff's violent conduct and they used only that amount of force necessary to gain control over Plaintiff, who posed a threat to these two officers and possibly to others, had Plaintiff overpowered Defendants. Defendants took the actions they did to gain control over Plaintiff, restore order, and prevent Plaintiff from further attacking them or others. Defendants did not act in a malicious or

9

sadistic fashion for the purpose of causing Plaintiff harm. Here, the amount of force used by Officers Owens and Daniel was minimal and it was not excessive under the circumstances. Instead, the methods chose to subdue Plaintiff and stop him from biting Officer Daniel were a proportional response to Plaintiff's resistance. Neither of the defendants used excessive force on Plaintiff. They merely responded to and attempted to stop an assault on Officer Daniel by Plaintiff. They were acting in such a way as to restore order, and to protect themselves from harm. The amount of force used by Defendants was reasonably necessary to protect their personal safety and restrain Plaintiff. Plaintiff has not presented any credible evidence to support his allegation that as soon as the officers walked into his cell they began to beat him while he was in a fetal position and offered no resistance.

8. To sustain his burden as to the objective element of the claim, Plaintiff would not have had to prove a significant injury. *See Hudson*, 503 U.S. at 8-10. However, because Plaintiff has not proven the subjective component of his Eighth Amendment claim, the Court need not examine whether he has satisfied the objective element of the claim.

9. Accordingly, Plaintiff has failed to demonstrate by a preponderance of the evidence that Defendants violated the Eighth Amendment by using excessive force in subduing and handcuffing him on December 14, 2009.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to carry his burden by a preponderance of the evidence and the Court accordingly enters judgment for Defendants.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**